IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| STAGE FRONT TICKETS, INC., | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-22-1978 |
| MICHAEL GUIFFRE, | * | |
| Defendant. | * | |

***

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant Michael Guiffre's Motion to Dismiss the Complaint (ECF No. 2). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2021). For the reasons outlined below, the Court will deny the Motion.

### I.   BACKGROUND

On August 14, 2019, Michael Guiffre entered into an Employment Agreement with Stage Front Tickets, Inc. ("Stage Front"). (Compl. ¶ 6, ECF No. 3). He served as the Director of Partnerships, working as the primary or secondary ticket broker for Stage Front's clients. (Id. ¶¶ 7–8). In early 2021, Guiffre suffered financial difficulties and reached out to Stage Front to request a raise. (Id. ¶ 10). The parties agreed to "a salary increase as well as a [$50,000] 'annual draw per pay.'" (Id. ¶ 11). This Bonus Agreement provided that Stage Front would pay Guiffre in bi-weekly payments "with the expectation that he would earn at least a [$50,000] bonus—based on ascertainable metrics—by the end of [Stage Front's] fiscal year." (Id. ¶ 13). Additionally, the Agreement allegedly required

Guiffre to repay the total sum of advanced payments if he failed to meet the standards required to earn a $50,000 bonus. (Id. ¶ 45). Guiffre received bi-weekly payments of $1,923.07 until December 2021, when Stage Front stopped payments in response to Guiffre's "substandard performance." (Id. ¶¶ 12, 15). Guiffre resigned on January 7, 2022, having received a total of $21,153.77 in advanced payments. (Id. ¶¶ 14–15).

Shortly after resigning, Guiffre began working for another ticketing company, Tickets for Less, LLC ("Tickets for Less"). (Id. ¶ 21). Guiffre's role at Tickets for Less was "substantially the same" as that of his position as Director of Partnerships for Stage Front. (Id. ¶ 23). On March 14, 2022, Stage Front issued a cease-and-desist letter (ECF No. 2-7) to Guiffre and Tickets for Less to enforce the Restrictive Covenant ("Covenant") portion of Guiffre's Employment Agreement with Stage Front. (Id. ¶ 24). The Covenant contains the following prohibitory language:

> [Guiffre] agrees that during the term of [his] employment and for a period of twelve (12) months after the termination of [his] employment for any reason, [Guiffre] shall not, anywhere [Stage Front] is doing business on the date hereof or during [his] employment including but not limited to, the State of Maryland, Washington D.C., and Northern Virginia (defined as the counties of Arlington, Fairfax, Falls Church, Manassas, and Manassas Park, in substantially the same role or capacity as [Guiffre] worked for [Stage Front], work for or provide services with respect to any individual or entity that is conducting business which competes with the business of [Stage Front] as conducted on the date hereof or at any time during [Guiffre's] employment.

(Id. ¶ 17; see also Emp. Agreement ¶ 4.3, ECF No. 2-5).

Tickets for Less argued that the Covenant was not enforceable, but Stage Front alleges that Guiffre provided Tickets for Less with "false and misleading information"

regarding the Agreement and his job duties. (Compl. ¶ 26). Tickets for Less later made the "independent decision to terminate Mr. Guiffre." (Id. ¶ 28). Guiffre then wrote to Stage Front to express his belief that the Covenant is not enforceable and notify Stage Front that he may seek legal remedies. (Id. ¶ 29; Mem. Supp. Def.'s Mot. Dismiss Compl. ["Mem."] at 3–4, ECF No. 2-1). On August 15, 2022, Stage Front filed a Complaint in the Circuit Court for Howard County, Maryland. (Compl. at 1). In his two-count Complaint, he alleges: breach of the Employment Agreement (Count I) and breach of the Bonus Agreement (Count II). Stage Front seeks an injunction against Guiffre requiring him to comply with the prohibitions in the Covenant, a refund of the $21,153.77 in advanced payments made to Guiffre before his resignation, attorneys' fees, and interest. (Compl. ¶¶ 43(a), (c)–(d), 51(a)).

On August 9, 2022, Guiffre removed the case to this Court based on diversity jurisdiction under 28 U.S.C. § 1332(a) and an amount in controversy greater than $75,000 under 28 U.S.C. § 1441(b). (Notice Removal at 3–5, ECF No. 1). On August 14, 2022, Guiffre filed the subject Motion to Dismiss under Rule 12(b)(1) and (6). (ECF No. 2). Stage Front filed an Opposition on August 29, 2022 (ECF No. 6) in which it requests leave to amend the Complaint if the Court finds the Complaint to be insufficient. Guiffre filed a Reply on September 8, 2022. (ECF No. 9).

## II.     DISCUSSION

A.     <u>Standards of Review</u>

1.     **Rule 12(b)(1)**

Federal Rule of Civil Procedure 12(b)(1) requires a plaintiff to establish the Court's subject-matter jurisdiction, namely the Court's authority to adjudicate a given issue. <u>Am. Fed'n of Gov't Emp. v. U.S. Off. of Special Couns.</u>, 476 F.Supp.3d 116. 121 (D.Md. 2020) ("Motions brought pursuant to Rule 12(b)(1) challenge a court's authority to hear the matter."). A defendant challenging a complaint under Rule 12(b)(1) may advance a "facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting 'that the jurisdictional allegations of the complaint [are] not true.'" <u>Hasley v. Ward Mfg., LLC</u>, No. RDB-13-1607, 2014 WL 3368050, at *1 (D.Md. July 8, 2014) (alteration in original) (quoting <u>Kerns v. United States</u>, 585 F.3d 187, 192 (4th Cir. 2009)).

When a defendant raises a facial challenge, the Court affords the plaintiff "the same procedural protection as he would receive under a Rule 12(b)(6) consideration." <u>Kerns</u>, 585 F.3d at 192 (quoting <u>Adams v. Bain</u>, 697 F.2d 1213, 1219 (4th Cir. 1982)). As such, the Court takes the facts alleged in the complaint as true and denies the motion if the complaint alleges sufficient facts to invoke subject-matter jurisdiction.

The Court may determine on its own initiative that it lacks subject-matter jurisdiction, regardless of whether a party to the case has raised this claim. <u>Arbaugh v. Y & H Corp.</u>, 546 U.S. 500, 506 (2006); <u>see also</u> Fed.R.Civ.P. 12(h)(3). "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject

matter, the court shall dismiss the action." Id. (quoting Kontrick v. Ryan, 540 U.S. 443, 455 (2004)). When the Court establishes that it does not have subject-matter jurisdiction, it "must dismiss the complaint in its entirety." Id.

### 2. Rule 12(b)(6) Standard

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, accept the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. See Albright v. Oliver, 510 U.S. 266,

268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir. 2005). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

**B.     Analysis**

    **1.     Breach of the Employment Agreement**

In Count I, Stage Front claims that Guiffre breached the Employment Agreement. (Compl. ¶ 34). Guiffre contends that Count I must be dismissed for lack of subject-matter jurisdiction because (1) the issue is moot, and (2) the claim is unripe. (Mot. at 8–9). The Court will address each in turn.

      **a.     Mootness**

The subject-matter jurisdiction of federal courts is limited to "actual cases or controversies" under Article III, Section 2 of the United States Constitution. Porter v. Clarke, 852 F.3d 358, 363 (4th Cir. 2017). A case or controversy becomes "moot," or ceases to exist, if "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Id. (quoting Powell v. McCormack, 395 U.S. 486, 496 (1969)). "If an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation," then the court must dismiss the case as moot. Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 72 (2013) (quoting Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477–78 (1990)).

An "intervening circumstance" may come in the form of a "change in factual circumstances, or . . . a change in the law." Simmons, 634 F.3d at 763 (quoting BankWest, Inc. v. Baker, 446 F.3d 1358, 1364 (11th Cir. 2006)). A change in factual circumstances can include a "claimant receiv[ing] the relief [they] sought to obtain through the claim." Id. (quoting Friedman's, Inc. v. Dunlap, 290 F.3d 191, 197 (4th Cir. 2002)). At that point, the case is moot because the court "can no longer serve the intended harm-preventing function or has no effective relief to offer." Friedman's, Inc., 290 F.3d at 197 (quoting Cnty. Motors v. Gen. Motors Corp., 278 F.3d 40, 43 (1st Cir. 2002)).

A case will not be dismissed as moot on the grounds that relief has already been granted if the plaintiff did not receive the "full relief" they sought. Simmons, 634 F.3d at 764–75; see also Carter v. Stewart Title & Guar. Co., No. CCB-12-0167, 2013 WL 436517, at *4 (D.Md. Feb. 4, 2013). In Simmons, the Fourth Circuit held that the case was not moot in part because the "offer for 'full relief' . . . did not offer for judgment to be entered against the Defendants." 634 F.3d at 764. The court emphasized that "[f]rom the view of the Plaintiffs, a judgment in their favor [was] far preferable to a . . . settlement agreement . . . because district courts have inherent power to compel defendants to satisfy judgments entered against them." Id. at 765. Similarly, in Carter, this Court found that the defendant "failed to provide [the plaintiff] with the complete relief necessary to moot his claims," not only because he "made no offer of judgment enforceable in court," but also because he did not offer "punitive damages, attorney's fees, treble damages, or any other amounts [the plaintiff] might receive" in the event that the plaintiff's claims survived. 2013 WL 436517, at *6.

7

Here, Guiffre argues that the breach of the Employment Agreement claim is moot because, as a result of his termination from Tickets for Less, Stage Front "has already gotten the relief it is seeking through the Court." (Mem. at 8). However, Stage Front seeks relief beyond Guiffre's termination, including damages, an injunction prohibiting Guiffre from violating the Employment Agreement, and an award of attorneys' fees. (Opp'n at 4; see also Compl. ¶ 43(a)–(d)). Stage Front did not receive any of these forms of relief when Tickets for Less terminated Guiffre. Like Simmons and Carter, Stage Front did not receive, nor was it offered, a judgment in its favor, as requested in the Complaint. (Compl. ¶ 43(c)). Furthermore, Guiffre did not pay or offer to pay for the attorneys' fees incurred by Stage Front in its efforts to enforce the Covenant, as requested in the Complaint. (Id. ¶ 43(d)). Finally, Guiffre's termination does not serve the same function as a court-ordered injunction prohibiting him from violating the terms of the Covenant in the future, and it has no bearing on his ability to obtain employment with another direct competitor within the timeframe stipulated in the Covenant. Therefore, the issue in Count I is not rendered moot by Guiffre's termination.

  **b.**  **Ripeness**

The doctrine of ripeness[1] serves as another avenue through which a Court may dismiss a case for lack of subject-matter jurisdiction. See South Carolina v. United States,

---

[1] In his Memorandum in Support of his Motion to Dismiss (ECF No. 2-1), Guiffre relies on the doctrine of standing to demonstrate a lack of ripeness in this case. In contrast, this Opinion will use the doctrine of ripeness, which contains slightly different elements than those of the doctrine of standing, to analyze Guiffre's argument. Despite the minor differences, Guiffre's analysis does not suffer due to its reliance on standing doctrine.

912 F.3d 720, 730 (4th Cir. 2019) ("[R]ipeness is a question of subject matter jurisdiction."). Under the ripeness doctrine, "[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." Scoggins v. Lee's Crossing Homeowners Ass'n, 718 F.3d 262, 270 (4th Cir. 2013) (alteration in original) (quoting Texas v. United States, 523 U.S. 296, 300 (1998)).

To analyze the ripeness of a claim, a Court must "decide whether the issue is substantially definite enough to be fit for judicial decision and whether hardship will result from withholding court consideration." Bryant Woods Inn, Inc. v. Howard Cnty., 124 F.3d 597, 602 (4th Cir. 1997). Under the substantially definite prong, "[a] case is fit for judicial decision when the issues are purely legal and when the action in controversy is final and not dependent on future uncertainties." Miller, 462 F.3d at 319. "The hardship prong is measured by the immediacy of the threat and the burden imposed on the [plaintiffs] . . . ." Id. (quoting Charter Fed. Sav. Bank v. Office of Thrift Supervision, 976 F.2d 203, 208 (4th Cir. 1992)). The Court may also account for "the cost to the parties of delaying judicial review" in the hardship analysis. Id. The plaintiff bears the burden of establishing ripeness. Id. If the plaintiff fails to show that their claim is ripe for review, the Court must dismiss the case for lack of subject-matter jurisdiction. Am. Fed'n, 476 F.Supp.3d at 121.

Here, Guiffre argues that Stage Front alleges "merely speculative" injuries that do not satisfy the first prong of the ripeness doctrine, (Mem. at 9), namely that "Guiffre intends to breach" the Employment Agreement," (Compl. ¶ 30 (emphasis added)). In response, Stage Front suggests the issues are ripe because Guiffre may violate the Covenant in the future, as he "already violated the [Covenant] once" and "does not believe that the

[Covenant] [is] enforceable." (Opp'n at 5). Additionally, Stage Front alleges harm in the form of attorneys' fees incurred through its efforts to enforce the Covenant. (Compl. ¶ 42).

Under the substantially definite prong of the ripeness doctrine, "[a] claim should be dismissed as unripe if the plaintiff has not yet suffered injury and any future impact 'remains wholly speculative.'" Doe v. Va. Dep't of State Police, 713 F.3d 745, 758 (4th Cir. 2013) (quoting Gasner v. Bd. of Supervisors, 103 F.3d 351, 361 (4th Cir. 1996)). In Doe, the Fourth Circuit Court of Appeals dismissed the claim as unripe because the injury was "contingent upon a decision to be made by a third party that has not yet acted." Id. In contrast, the Fourth Circuit noted in Air Evac EMS, Inc. v. Cheatham, 910 F.3d 751 (4th Cir. 2018), that "financial harm is a classic and paradigmatic form of injury in fact." Id. at 760 (quoting Cottrell v. Alcon Labs., 874 F.3d 154, 163 (3d Cir. 2017)). Similarly, in this case, Stage Front alleges a financial injury in the form of attorneys' fees. (Compl. ¶ 42). Therefore, even if the Complaint includes speculative injuries, Stage Front has nevertheless alleged an injury in fact that satisfies the ripeness doctrine.

Accordingly, the Court will deny Guiffre's Motion as to Count I.

### 2. Breach of the Bonus Agreement

Guiffre argues that Count II must be dismissed for failure to state a claim upon which relief may be granted because (1) the Complaint does not provide sufficient detail regarding the claim, and (2) the Bonus Agreement is not legally enforceable. (Mot. at 10). "To state a claim for breach of contract, the plaintiff must show that the defendant owed him a contractual obligation and that the defendant breached that obligation." All Weather, Inc. v. Optical Sci., Inc., 443 F.Supp.3d 656, 666 (D.Md. 2020) (quoting Thaler v. Donald

J. Trump for President, Inc., 304 F.Supp.3d 473, 477 (D.MD 2018)). Further, the plaintiff must provide facts that "allege with certainty and definiteness" the existence of a contractual obligation. RRC Ne., LLC v. BAA Md., Inc., 994 A.2d 430, 442 (Md. 2010). Under Maryland law, the creation of a contract "requires mutual assent (offer and acceptance), an agreement definite in its terms, and sufficient consideration." Spaulding v. Wells Fargo Bank, N.A., 714 F.3d 769, 777 (4th Cir. 2013) (quoting CTI/DC, Inc. v. Selective Ins. Co. of Am., 392 F.3d 114, 123 (4th Cir. 2004)).

Guiffre contends that Stage Front did not provide a sufficient amount of detail to state a prima facie case for breach of contract. (Mot. at 10). However, Stage Front is correct that "the level of detail that [Guiffre] demands . . . is entirely inappropriate." (Opp'n at 7). At this stage, Stage Front need only allege sufficient facts necessary to establish the two elements of its breach of contract claim: (1) Guiffre owed Stage Front a contractual obligation, and (2) Guiffre breached that obligation. The laundry list of additional facts that Guiffre argues must be included are not necessary to establish those two elements. (See Mot. at 11).

    a.    **Mutual Assent**

Regarding the first element—contractual obligation—Stage Front must show that the Bonus Agreement was based on mutual assent, definite terms, and sufficient consideration. Spaulding, 714 F.3d at 777. Mutual assent requires a "meeting of the minds" through which the parties express an "intent to be bound" by the "essential terms of the agreement." Brito v. Major Elec. Servs., LLC, 526 F.Supp.3d 95, 111–12 (D.Md. 2021). The alleged contract in this case appears to be a unilateral contract in which "a definite

promise is made in exchange for performance." Fitch v. Maryland, No. PJM-18-2817, 2021 WL 6197416, at *6 (D.Md. Dec. 30, 2021). Under Maryland law, "unilateral contracts are 'accepted not by traditional acceptance, but by performance.'" Id. (quoting Pavel Enters., Inc. v. A.S. Johnson Co., 674 A.2d 521, 523 n.7 (Md. 1996)).

In Fitch, this Court explained that the unilateral contract at issue "require[d] the performance of certain conditions before the 'right' to subsidized benefits vest[ed]." Id. Similarly, in Sharp Electronics Corp. v. Deutchse Financial Services Corp, 216 F.3d 388 (4th Cir. 2000), which also involved a unilateral contract, the Fourth Circuit concluded that, when the defendant "began its performance, . . . [the defendant] accept[ed] [the plaintiff's] offer." Id. at 394 (emphasis added).

Here, Stage Front alleges that it offered Guiffre a salary increase, plus a $50,000 "annual draw per pay" bonus, based on "the expectation that [Guiffre] would earn at least a [$50,000] bonus." (Compl. ¶ 11–13). The Agreement also allegedly required Guiffre to "repay [Stage Front] for the advanced payments" if he did not meet that expectation. (Id. ¶ 45). The Complaint indicates that Guiffre accepted Stage Front's offer through performance by continuing to work from June 28, 2021—the date of the agreement—to January 7, 2022—the date of his resignation. (See id. ¶¶ 11–14). Guiffre's alleged obligation under the agreement was to "earn at least a [$50,000] bonus—based on ascertainable metrics." (Id. ¶ 13). Simply put, Guiffre was obligated to continue his usual duties, but to perform more of those duties to earn an additional $50,000. (See id.; see also Opp'n at 8 (stating bonus payments were based on Mr. Guiffre's "anticipated possible achievements above and beyond his job requirements" (emphasis in original))). Thus,

12

much like the situation in Sharp, the facts of the Complaint suggest Guiffre accepted the terms of the Bonus Agreement by beginning his alleged contractual obligations.

Additionally, similar to the explanation in Fitch, the Complaint suggests that Guiffre's right to a full $50,000 bonus was contingent upon his performance of additional work that amounted to $50,000. (Compl. ¶¶ 11–13). While Stage Front agreed to pay Guiffre in advance, Stage Front also claims it "expressly informed [Guiffre] . . . [of its] expectation that he would earn at least a [$50,000] bonus . . . by the end of [its] fiscal year." (Id.). Thus, the Complaint includes sufficient facts to suggest that Guiffre's continued performance at work, subject to new "metrics" of success, served as his acceptance of the terms in the bonus agreement.

### b. Definite Terms

In addition to mutual assent, the Complaint must allege that the agreement contained definite terms. See Spaulding, 714 F.3d at 777. Under Maryland law, a contract "must . . . be sufficiently definite to clearly inform the parties to it of what they may be called upon by its terms to do." Mogavero v. Silverstein, 790 A.2d 43, 50 (Md. 2002). Definiteness of terms allows "the courts . . . to know the purpose and intention of the parties." Id. "If an agreement omits an important term, or is otherwise too vague or indefinite with respect to an essential term, it is not enforceable." Brito, 526 F.Supp.3d at 112. Furthermore, Maryland law provides that "the mere fact of an open term will not permit [the parties] to disclaim [their manifestation of intent]." McKenzie v. Comcast Cable Commc'ns, Inc., 393 F.Supp.2d 362, 370 (D.Md. 2005). Therefore, an enforceable

contract need only include the <u>essential</u> terms of the agreement, rather than every conceivable term the parties could include. <u>Id.</u>

In <u>Kantsevoy v. LumenR LLC</u>, 301 F.Supp.3d 577, 602 (D.Md. 2018), this Court found sufficient terms in a contract that "specifie[d] a price . . . to be paid in consideration for" a specified service, noting that "[t]here [was] no suggestion that the parties were unaware of what services were intended." <u>Id.</u> The Court held that the plaintiff provided sufficient facts to bring a breach of contract claim because the plaintiff "plausibly allege[d] that there was an offer of payment for services, that [plaintiff] accepted that offer, that [plaintiff] held up his end of the contract, and that [defendant] failed to properly pay [plaintiff]." <u>Id.</u> at 603.

Here, Guiffre argues the Complaint is insufficient because Stage Front neither stated at what intervals the bonus was to be earned, nor explained any planned disciplinary action in the event of a breach. (<u>See</u> Mot. at 11). Per the Complaint, the terms of the agreement included how much and when Stage Front would pay Guiffre ($1,923.07 bi-weekly for a total of $50,000 by the end of the fiscal year), (Compl. ¶ 46); Guiffre's contractual obligation (perform duties that amount to $50,000 in compensation), (<u>id.</u> ¶ 45); and repayment upon Guiffre's failure to meet his contractual obligations, (<u>id.</u>).

Similar to the situation in <u>McKenzie</u>, "[t]he case law does not explicitly define what terms are deemed to be 'essential' or 'significant'" in this case. 393 F.Supp.2d at 370. Even so, Stage Front's allegations adequately indicate that "the parties were []aware of what services were intended." <u>Kantsevoy</u>, 301 F.Supp.3d at 602. Stage Front alleges the existence of terms regarding the services Guiffre was expected to perform and the

14

compensation he would receive in return. (See Compl. ¶ 45). Accepting these facts as true, the Court can reasonably infer that the parties were aware of their obligations to one another, both in the event Guiffre met Stage Front's expectations, and in the event that he did not. Therefore, Stage Front has alleged sufficiently definite terms to establish the existence of an enforceable Bonus Agreement.

### c. Consideration

Finally, an agreement must be based on valuable consideration to be enforceable. See Spaulding, 714 F.3d at 777. Guiffre argues that the Bonus Agreement is no more than an "illusory promise" that lacks consideration. (Mot. at 7). "An illusory promise, which 'does not actually bind or obligate the promisor to do anything,' does not suffice as consideration." Aerotek, Inc. v. Obercian, 377 F.Supp.3d 539, 554 (D.Md. 2019) (quoting Cheek v. United Healthcare of Mid-Atl., Inc., 835 A.2d 656, 661 (2003)). "In Maryland, consideration may be established by showing 'a benefit to the promisor or a detriment to the promisee.'" Cheek v. United Healthcare of Mid-Atl., Inc., 835 A.2d 656, 661 (Md. 2003) (quoting Hartford Cnty. v. Town of Bel Air, 704 A.2d 421, 430 (Md. 1998)). An agreement lacking in sufficient consideration does not establish a contractual obligation upon which a breach of contract claim may be based. Windesheim v. Verizon Network Integration Corp., 212 F.Supp.2d 456, 462 (D.Md. 2002) (holding that a contract with no consideration is "not legally enforceable in an action for breach of contract").

Additionally, under Maryland law, "no enforceable contractual obligation is created when an employer offers employees a bonus for doing that which an employee is already required to do pursuant to" the original employment contract. Windesheim, 212 F.Supp.2d

at 462. "[T]he rationale for th[is] rule is that there is no consideration . . . to support the employer's promise of additional compensation." Id.; see also Johnson, 28 A.2d at 608 (finding bonus agreement unenforceable because it "d[id] not provide for any work to be done by Johnson in addition to the work he was required to do under his original contract of employment").

However, in Moon v. Veritas Techs. LLC, GJH-21-2750, 2022 WL 3348103, at *7 (D.Md. Aug. 12, 2022), this Court found valuable consideration for a bonus agreement. Id. The "[p]laintiff allege[d] that the incentive payments were supplementary compensation directly tied to specific performance objectives." Id. (emphasis added). In the absence of facts contradicting this allegation, "the Court [could not] conclude that there was no consideration for [d]efendant's promise such that there was no mutuality of assent." Id.

Here, the alleged Bonus Agreement is separate from Guiffre's original Employment Agreement. (See Compl. ¶ 10 (claiming Bonus Agreement was devised in response to Guiffre's request for "additional compensation")). Stage Front allegedly agreed to pay Guiffre a $50,000 bonus, contingent upon him meeting expectations "based on ascertainable metrics." (Id. ¶ 13). Guiffre argues that requiring a higher standard of performance for the same job functions he was already contracted to complete does not create the "valuable consideration" necessary to have an enforceable contract. (Id. at 10 (citing Johnson v. Schenley Distillers Corp., 29 A.2d 606 (Md. 1942)). Stage Front responds that the Bonus Agreement is supported by consideration because the payments are conditioned on "achievements above and beyond [Mr. Guiffre's] job requirements." (Opp'n at 8 (emphasis in original)). Similar to the "specific performance objectives" in

Moon, the alleged fact that Guiffre would provide services that exceed his current duties, either in standard or quantity or both, in return for advanced bonus payments suggests that the Bonus Agreement was based on consideration separate from that which established the original Employment Agreement. Therefore, Stage Front has alleged sufficient facts at this early stage to suggest the Bonus Agreement was based on valuable consideration. Accordingly, the Court will deny Guiffre's motion as to Count II.

### III.   CONCLUSION

For the foregoing reasons, the Court will deny Michael Guiffre's Motion to Dismiss the Complaint (ECF No. 2). A separate Order follows.

Entered this 16th day of December, 2022.

/s/
George L. Russell, III
United States District Judge